UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.Z. on behalf of M.Z., <br><br> Plaintiff, <br><br> v. <br><br> MAHWAH TOWNSHIP BOARD OF EDUCATION, <br><br> Defendant. | Civil Action No. 04-4003 (KSH) <br><br><br><br> **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.    INTRODUCTION**

A.Z., the mother of M.Z., a disabled 9 year old boy, has sued the Mahwah Township Board of Education alleging violations of the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973 and the New Jersey Special Education Law, N.J.S.A. 18A:46-1 *et seg.* and the New Jersey Special Education Administrative Code, N.J.A.C. 6A:14-1.1 *et seg.* A.Z. claims that the Mahwah Township Board of Education did not provide M.Z. with a free and appropriate public education ("FAPE") in the least restrictive environment ("LRE") as required by the IDEA. Currently before the Court are a summary judgment motion by the plaintiff and a cross-motion for summary judgment by the defendant, based on rulings by Administrative Law Judge Jesse H. Strauss. On March 30, 2004, Judge Strauss denied as untimely A.Z.'s demand for reimbursement of M.Z.'s private school tuition for the 2002-2003 school year, and on July 6, 2004, Judge Strauss granted A.Z.'s demand

for reimbursement of M.Z.'s private school tuition for the 2003-2004 school year.  This litigation and these summary judgment motions followed.

This Court has jurisdiction pursuant to 20 U.S.C.A. § 1415(i)(2)(A), which allows any party who has been "aggrieved by the findings" of IDEA administrative procedures "the right to bring a civil action . . . in a district court of the United States, without regard to the amount in controversy."  20 U.S.C.A. § 1415(i)(2)(A).

## II.    STANDARD OF REVIEW

In an IDEA case, this Court is required to give the factual findings of the administrative law judge a "modified version of *de novo* review."  L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006).  Under this standard, the Court gives "due weight" to the determinations of the administrative law judge.  Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley, 458 U.S. 176, 206 (1982).  However, the Court is not required to accept the findings of the administrative law judge, Carlisle Area School v. Scott P. By and Through Bess P., 62 F.3d 520, 529 (3d Cir. 1995), as long as the Court "fully explain[s] its reasons for departing from the state decision,"  S.H. v. State-Operated School Dist. of City of Newark, 336 F.3d 260, 271 (3d Cir. 2003)**.**

## III.   BACKGROUND

In the fall of 1999,  when M.Z. had just turned three years old and was in preschool, A.Z. brought M.Z. to the Center for Child Development and Wellness ("CCDW") in Ridgewood, New Jersey for an evaluation.  A.Z. stated that she was concerned about M.Z. because he had exhibited unclear speech and drooled excessively.  CCDW diagnosed M.Z. with moderate expressive language deficits and mild to moderate articulation deficits.  In December 1999, A.Z.

wrote to the Mahwah school district to request an evaluation of M.Z. by a Child Study Team ("CST") in order to determine whether M.Z. was eligible for special education programs and services through the school district. The Mahwah Board of Education (hereafter, "Board") convened a CST and conducted numerous evaluations over the next few months, but did not find that M.Z. was eligible for any preschool special education services. During M.Z.'s second year of preschool, A.Z. brought M.Z. for an evaluation at the Pediatric Otolaryngology Department of the NYU School of Medicine, where M.Z. was diagnosed with an articulation disorder associated with oromotor weakness. Speech therapy and oromotor exercises were recommended to address M.Z.'s disorder.

When M.Z. started kindergarten at the Betsy Ross School in Mahwah Township in the fall of 2001, A.Z. requested another evaluation. This time, the Board found that M.Z. was eligible for special education in the form of speech and language services. The Board developed an Individualized Education Program ("IEP") for him. An IEP is a written statement that includes the child's present condition, the annual goals for the child and how those goals will be measured, and what special education services the district will provide. 20 U.S.C. § 1412(d)(1)(a)(I). The IEP indicated the M.Z. would receive 30 minutes of speech therapy per week, with re-evaluation in one year.

In April, 2002, dissatisfied with her son's progress, A.Z. requested another evaluation. Another CST was convened, and after numerous evaluations the Board found that M.Z. had ADHD, fine and visual motor coordination disorder, functional gross motor skills but with deficits in higher level balance and coordination, low-normal muscle tone, speech and language deficits, and articulation deficits. However, the Board's learning consultant found that M.Z. was

3

able to manage grade-level tasks.  An IEP was written to address M.Z.'s needs during the coming 2002-2003 school year at Mahwah School District.  The IEP proposed that M.Z. be moved into the first grade at the Betsy Ross School, where he would be placed in separate special education classes for four forty-minute sessions each school day, and would receive two thirty-minute speech and language sessions weekly.  The IEP did not include any physical therapy nor occupational therapy, although both had been recommended by the CST evaluations.  At a meeting about the IEP with the CST on June 21, 2002,  M.Z.'s parents declined to agree to the IEP – instead, they told the CST that they wanted M.Z. to repeat kindergarten rather than push him into first grade only to separate him from the mainstream students for approximately 60% of every class day.  The CST disagreed, stating that "[M.Z.'s] deficits do not appear to be remediated through repetition of Kindergarten curriculum and he would benefit from special education modifications.  He should proceed with age-peers and receive academic support."  Individual Educational Program (IEP) Components Report at 20 (June 21, 2002).

      A.Z. stated in her complaint that she attempted to contact CST members numerous times over the summer of 2002 in order to discuss the best course of action for M.Z., but she contends that her telephone calls were never returned.  (Complaint ¶¶ 32, 34, 35.) In August, she and her husband decided that M.Z. should repeat kindergarten, and they enrolled him in St. Paul's, a private parochial school, for the 2002-2003 school year.  In her amended request for a due process hearing before the Office of Administrative Law,  A.Z. sought reimbursement for the cost of St. Paul's for the 2002-2003 school year.

      The administrative law judge ("ALJ") found that the M.Z.'s parents placed him in St. Paul's "unilaterally," without the consent or referral of any public agency.  <u>A.Z. o/b/o M.Z. v.</u>

Mahwah Twp. Bd. of Educ., N.J. Office of Admin. Law Dkt. No. EDS 9972-03 at 3 (March 30, 2004).  The ALJ also found that M.Z.'s parents did not give written notice to the school district that A.Z. was going to be attending St. Paul's for that year, nor did they request tuition reimbursement for 2002-2003 school year at the June 21, 2002 meeting with the CST.  Id.

**A.      Public Funding of Private School Placement**

If the state does not provide a FAPE to a child with a disability, it may be required to reimburse the private school costs of an appropriate education for that child.  T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000).  Under the IDEA, "if such children are placed in, or referred to, such schools or facilities by the State or appropriate local educational agency," the special education and related services are provided at no cost to their parents.  20 U.S.C. § 1412(a)(10)(B)(i).  However, if such children are placed in private schools and facilities without the consent or referral of the public agency, "a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education [FAPE] available to the child in a timely manner prior to that enrollment."  20 U.S.C. § 1412(a)(10)(C).

The provisions of 20 U.S.C. § 1412(a)(10)(C) are echoed in the New Jersey Administrative Code on Special Education,  which states:

> If the parents of a student with a disability, who previously received
> special education and related services from the district of residence, enroll
> the student in a nonpublic school, an early childhood program, or approved
> private school for the disabled without the consent of or referral by the
> district board of education, an administrative law judge may require the
> district to reimburse the parents for the cost of that enrollment if the
> administrative law judge finds that the district had not made a free,
> appropriate public education available to that student in a timely manner
> prior to that enrollment and that the private placement is appropriate.

N.J.A.C. 6A:14-2.10(b).  In order to receive such reimbursement, parents must notify "the district board of education of their concerns and their intent to enroll their child in a nonpublic school at public expense."  N.J.A.C. 6A:14-2.10(c).  If the parents do not make this notification, the reimbursement may be reduced or denied, as follows:

> (c) . . . The cost of reimbursement described in (b) above may be reduced or denied:
>
> 1. If at the most recent IEP meeting that the parents attended prior to the removal of the student from the public school, the parents did not inform the IEP team that they were rejecting the IEP proposed by the district;
>
> 2. At least 10 business days (including any holidays that occur on a business day) prior to the removal of the student from the public school, the parents did not give written notice to the district board of education of their concerns or intent to enroll their child in a nonpublic school;
>
> 3. If prior to the parents' removal of the student from the public school, the district proposed a reevaluation of the student and provided notice according to N.J.A.C. 6A:14-2.3(e) and (f) but the parents did not make the student available for such evaluation; or
>
> 4. Upon a judicial finding of unreasonableness with respect to actions taken by the parents.

N.J.A.C. 6A:14-2.10(c).

### B.   Tuition Reimbursement for the 2002-2003 School Year

The ALJ denied A.Z.'s request for tuition reimbursement for the 2002-2003 school year. A.Z. argues that the ALJ found that the notice requirement had not been met "in part because he erroneously found that they had to meet both requirements of §§ 6A:14-2.11(c)1 and 2, rather than just one or the other."  (Plaintiff's Moving Brief at 40.)  The ALJ found that at the June 21, 2002 IEP meeting, "[a]lthough A.Z., by refusing to sign, implicitly informed the IEP team that she was rejecting the proposed IEP in satisfaction of Section (c)1, she failed to comply with Section (c)2 which requires the parents to give written notice to the district board of education."

6

A.Z. o/b/o M.Z. v. Mahwah Twp. Bd. of Educ., N.J. Office of Admin. Law Dkt. No. EDS 9972-03 at 8 (March 30, 2004). The ALJ read N.J.A.C. 6A:14-2.10(c)1 and (c)2 conjunctively rather than disjunctively.

According to basic rules of statutory construction, "the word 'or' carries with it natural disjunctive import" unless there is evidence of a contrary congressional intent. Pine Belt Chevrolet, Inc. v. Jersey Cent. Power and Light Co., 132 N.J. 564, 578 (1993). The Court finds that Congress intended N.J.A.C. 6A:14-2.10(c)1 and N.J.A.C. 6A:14-2.10(c)2 to be read conjunctively, rather than disjunctively, for two reasons. First, to read N.J.A.C. 6A:14-2.10(c)1 and N.J.A.C. 6A:14-2.10(c)2 disjunctively would render N.J.A.C. 6A:14-2.10(c)2 inoperative. Under a disjunctive interpretation, N.J.A.C. 6A:14-2.10(c)2 would read as follows:

> (c) . . . The cost of reimbursement described in (b) above may be reduced or denied:
>
> 1. If at the most recent IEP meeting that the parents attended prior to the removal of the student from the public school, the parents did not inform the IEP team that they were rejecting the IEP proposed by the district; **[or]**
>
> 2. At least 10 business days (including any holidays that occur on a business day) prior to the removal of the student from the public school, the parents did not give written notice to the district board of education of their concerns or intent to enroll their child in a nonpublic school;

As can be seen, the absence of the work "if" at the beginning of paragraph 2, along with the disjunctive, destroys the meaning and literally the grammar of paragraph 2.

"A construction that will render any part of a statute inoperative, superfluous, or meaningless, is to be avoided." State v. Reynolds, 124 N.J. 559, 564 (1991). The nearest way to give meaning to N.J.A.C. 6A:14-2.10(c)2 is to construe it as a conjunction to N.J.A.C. 6A:14-2.10(c)1. Under this interpretation, the reimbursement may be reduced or denied if the parents

7

do not inform the IEP team at the last IEP meeting that they are rejecting the IEP plan, *and* do not give written notice to the district 10 days before removing the student.  In other words, the parents must *do both.*  The second reason that the Court finds that Congress intended N.J.A.C. 6A:14-2.10(c)1 and N.J.A.C. 6A:14-2.10(c)2 to be read conjunctively is the reference to both N.J.A.C. 6A:14-2.10(c)1 and N.J.A.C. 6A:14-2.10(c)2 together in subsection (d) of the statute.  That subsection reads, "[t]he cost of the reimbursement . . . may not be reduced or denied if the parents failed to provide *the required notice described in (c)1 and 2 above. . .*"  N.J.A.C. 6A:14-2.10(d) (emphasis added).  The most natural interpretation of that statement is that the required notice is described in N.J.A.C. 6A:14-2.10(c)1 *and* N.J.A.C. 6A:14-2.10(c)2.  Subsection (d) mentions "the notice requirement in (c)1 and 2 above" two more times, adding additional weight to the interpretation that (c)1 and (c)2 are conjunctive and not disjunctive.  "[A]ll parts of the statute must be read together so that each part is consistent with the whole."  Pine Belt Chevrolet, Inc. v. Jersey Cent. Power and Light Co., 132 N.J. 564, 579 (1993).  The Court finds that the ALJ properly interpreted N.J.A.C. 6A:14-2.10(c)1 and N.J.A.C. 6A:14-2.10(c)2 conjunctively.  Since M.Z.'s parents did not give written notice to the district board of education of their intent to enroll their child in a non-public school, as required by N.J.A.C. 6A:14-2.10(c)2,  the ALJ appropriately found that M.Z.'s parents did not give the school district proper or timely notice under N.J.A.C. 6A:14-2.10(c).

The ALJ also found that A.Z.'s demand for reimbursement for the 2002-2003 school year was untimely.  A.Z. o/b/o M.Z. v. Mahwah Twp. Bd. of Educ., N.J. Office of Admin. Law Dkt. No. EDS 9972-03 at 8 (March 30, 2004).  The first time the ALJ received a claim for tuition reimbursement for the 2002-2003 school year was on December 2, 2003.  In Bernardsville Bd. of Educ. v. J.H.,  42 F.3d 149 (3d Cir. 1994), the Third Circuit stated that parents who object to the

IEP created by the board have a duty to begin review proceedings "within a reasonable time of the unilateral placement for which reimbursement is sought." Id. at 158.  Considering what amount of time might be considered "reasonable," the court continued, "more than one year, without mitigating excuse, is an unreasonable delay." Id.  M.Z.'s parents enrolled A.Z. in St. Paul's in August, 2002 so that he might begin school there in September, 2002.  A.Z. did not apply for tuition reimbursement for the 2002-2003 school year until December 2, 2003, more than one year from his placement in the private school.  The Court agrees with the ALJ's finding that there are no mitigating factors that might excuse M.Z.'s parents' failure to give proper notice within one year.   Therefore, A.Z.'s motion for summary judgment as to the 2002-2003 school year is denied and the Court affirms the decision of the ALJ.that denied A.Z.'s claim for tuition reimbursement for the 2002-2003 school year.

C.     **Tuition Reimbursement for the 2003-2004 School Year**

The ALJ granted A.Z.'s request for tuition reimbursement for the 2003-2004 school year because Mahwah Township Board of Education "failed to develop an appropriate IEP before the 2003-2004 school year began" and because "St. Paul's was an appropriate placement" for that school year.  A.Z. o/b/o M.Z. v. Mahwah Twp. Bd. of Educ.,  N.J. Office of Admin. Law Dkt. No. EDS 9972-03 at 16-17 (July 2, 2004).  Mahwah Township Board of Education claims error.  First, the Board argues that reimbursement is only allowed if the child "previously received special education services from the district of residence," and they claim that M.Z. did not. (Defendant's Moving Brief at 6.)  Second, the Board argues that A.Z. did not provide proper notice as required under N.J.A.C. 6A:14-2.10.  (Id. at 9.)  Third, the Board argues that it was not required to develop an IEP for M.Z. prior to the start of the 2003-2004 school year because he

9

had not yet attended the school.  (Id. at 10.)   Finally, the Board argues that M.Z. does not have a valid due process claim because he is a "unilaterally placed parochial school student" and as such, does not enjoy all the protections of the IDEA.  (Id. at 14.)

     As to the Board's first, threshold argument that reimbursement is only allowed if the child "previously received special education services from the district of residence," the ALJ found that M.Z.'s parents should not be denied tuition reimbursement because they refused to place their child in a public school program that they found inappropriate for their child's needs. The Court agrees with the ALJ's decision. Acceptance of the Board's position would place parents of disabled children "in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to reimbursement."  J.B. v. Watchung Hills Regional School Dist. Bd. of Educ., 2006 WL 38936, 7 (D.N.J. 2006) (Chesler, J.) (internal citations omitted).  Parents should not be so penalized for choosing an alternate education program.  Moreoever, the Board's position would eliminate reimbursement for children whose disabilities are diagnosed when they are too young to have attended public schools in the district.  The Board does not offer authority for its position, and the Court finds no reason to disagree with the ALJ's finding on this issue.

     The Board also argues that it was not required to develop an IEP for M.Z. until M.Z. actually began to attend school in the district – it contends only actual attendance triggers its responsibility to develop an IEP, not enrollment.  The ALJ disagreed and found that neither the IDEA, nor case law, nor the New Jersey special education laws and regulations supported the Board's premise.  He also found that since M.Z. had already been evaluated and determined eligible for special education, N.J.A.C. 6A:14-1.3 and 3.7(a) and (b) triggered the Board's responsibility to have an IEP in effect at the beginning of the school year, with no delay.  Based

on his findings, the ALJ held that A.Z. was entitled to place M.Z. in a private school for the 2003-2004 school year. The Court agrees with the findings of the ALJ. It would strain credulity to imagine that the legislature intended that a parents of a disabled child would enroll that child in a school without a program in place to deal with disabilities that the district has already diagnosed, particularly where, as here, the parents' disagreement with the previous IEP drove them to remove the child from the public school. Such parents would be faced with a Hobson's choice – enroll their disabled child in the public school in the hope that an appropriate IEP would be developed or enroll their child in a private school where they know what services will be provided to their child – but foot the entire bill themselves. N.J.A.C. 6A:14-3.7(a)(1) clearly states that "[a]t the beginning of each school year, the district board of education *shall have in effect an IEP* for every student who is receiving special education and related services from the district." N.J.A.C. 6A:14-3.7(a)(1) (emphasis added). The Court finds no error in the ALJ's decision on this issue.

The Board argues that A.Z. did not provide proper notice as required under N.J.A.C. 6A:14-2.10(c), because she did not advise the Board of the specific deficiencies in the program that the Board offered M.Z., which prevented any remedial action the Board could have taken. In finding that A.Z. had provided proper notice, the ALJ noted that on June 2, 2003, A.Z. sent a letter to Betsy Ross School in which she requested a meeting with the CST to discuss the services that would be provided to M.Z. in the upcoming school year. Second, on June 18, 2003 A.Z. sent a letter to Sheralyn Gottlieb, then Director of Special Services at the Board, inquiring as to who would be providing M.Z.'s occupational and physical therapy in the upcoming school year. Ms. Gottlieb replied in writing, and stated that the Board was ready, willing, and able to provide an appropriate educational program for M.Z. On August 11, 2003, A.Z. wrote to

Catherine Bennett, Principal of Betsy Ross School and requested another meeting to discuss M.Z.'s educational needs for the upcoming school year. Still, no CST was convened, and no IEP was developed. On August 18, 2003 A.Z. wrote again to Principal Bennett and informed her that "[w]e decided that it will be in our son [sic] best interest to continue education at St. Paul Interparochial School at this time." On August 20, 2003, A.Z. sent a letter to Lisa Rizzo, the new Director of Special Services at the Board, and informed Ms. Rizzo that she would be seeking tuition reimbursement for the 2003-2004 school year. The ALJ found that the above letters comprised sufficient and appropriate notice to fully comply with N.J.A.C. 6A:14-2.10(c).

The Court agrees with the ALJ's decision. First, the Board did not develop and IEP for M.Z. in time for the beginning of the 2003-2004 school year, as required. Second, A.Z. made numerous attempts, in writing, to have an appropriate plan developed for her son before the school year began. Third, A.Z. informed the Board, in writing, that she was going to remove her child from the public school and place him in St. Paul's. Finally, A.Z. informed the Board, in writing, that she was going to seek tuition reimbursement. The Court does not find any error in the ALJ's finding.

Finally, the Board argues that M.Z. does not have a valid due process claim because he is a "unilaterally placed parochial school student" and, as such, does not enjoy all the protections of the IDEA. The Court first notes that this specific due process argument was not made before the ALJ. "[A] district court may not set aside the result of the administrative proceedings on the basis of issues that were never raised or were uncontested before the administrative law judge." Remis by Trude v. New Jersey Dept. of Human Services, 815 F.Supp. 141, 144 n.3 (D.N.J. 1993) (Brotman, J.). Accord R.G. v. Glen Ridge Bd. of Educ., 2005 WL 3274857, 3 (D.N.J.

2005) (Martini, J.) ("Pursuant to the IDEA, failure to raise an issue at the administrative level will result in a waiver of the issue in a civil action before a federal district court."). But this argument is merely a variation on the Board's arguments that tuition reimbursement was not available because M.Z. had not previously received special education services from the public school district, and because he was not "enrolled" until he actually attended the public school. Both of these issues have already been discussed, and the Court did not find any error in the ALJ's decisions thereon. Therefore, the Court rejects the Board's final point of error.

## IV.   CONCLUSION

For the above stated reasons, the Court affirms the March 30, 2004 decision of the ALJ in which he denied A.Z.'s demand for reimbursement of M.Z.'s private school tuition for the 2002-2003 school year and denies A.Z.'s summary judgment motion of that decision; and the Court affirms the July 6, 2004 decision of the ALJ in which he granted A.Z.'s demand for reimbursement of M.Z.'s private school tuition for the 2003-2004 school year and denies Mahwah Township Board of Education's summary judgment motion of that decision. An appropriate order will be entered.


Dated: March 30, 2006


/s/ Katharine S.Hayden
Katharine S. Hayden, U.S.D.J.